IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No.: 1:22-cv-01883-SKC

GREG HARRIMAN,
ANDREW KAMBICH, and
ELIZABETH KAMBICH,

      Plaintiffs,

v.

JOHN SMART,

      Defendant.

---

## ORDER RE: THE PARTIES' SUMMARY JUDGMENT MOTIONS (DKTS. 57 & 58-1)

---

This case arises from Plaintiffs' two claims for relief alleging breach of contract and promissory estoppel. Before the Court are the parties' respective motions seeking either full or partial summary judgment. Defendant has filed a Motion for Summary Judgment (Dkt. 57) seeking judgment in his favor on both claims for relief asserted by Plaintiffs. Plaintiffs have filed an Amended Motion for Partial Summary Judgment[1] (Dkt. 58-1) seeking judgment in their favor on their breach of contract

---

[1] Plaintiffs originally filed a motion for partial summary judgment (Dkt. 56) and later moved to amend that motion (Dkt. 58). Defendant did not oppose the amendments and filed its response to the Plaintiffs' proposed Amended Motion for Partial Summary Judgment at Dkt. 58-1. *See* Dkt. 65 (Defendant's response stating in footnote 1: "While Plaintiffs' Amended Motion for Summary Judgment [Dkt 58-1] is

claim only as concerns Defendant's alleged breach of Section 3.03 of the agreement between them. Both motions are fully briefed.

The Court has carefully considered the parties' filings, their exhibit attachments, pertinent matters from the Court's own docket, and applicable law and legal authorities. Because, when considering the undisputed material facts, no reasonable jury could conclude Defendant breached Section 3.03 of the parties' contract, Defendant's motion is GRANTED (in part) and Plaintiffs' motion is DENIED. Further, because the indemnification provision of the parties' contract includes Defendant's indemnification of Plaintiffs for nominal damages, Defendant's motion is DENIED (in part) regarding his alleged breach of Sections 4.09 and 8.02. Finally, because the parties' contract is a valid, enforceable, and fully integrated agreement between them on all essential terms, Plaintiffs' claim for promissory estoppel is precluded as a matter of law and Defendant's motion is GRANTED (in part) as to this claim.

## UNDISPUTED MATERIAL FACTS

This is a breach of contract case. On December 31, 2021, Plaintiffs and Defendant entered into a Stock Purchase Agreement (SPA), whereby Plaintiffs purchased all the issued and outstanding shares of 411 Flash Corporation ("411

---

untimely, we do not intend to oppose it on this basis, and have addressed the amended motion for summary judgment in this filing."). In this Order, the Court grants Plaintiffs' Motion to Amend (Dkt. 58) and accepts the Amended Motion for Partial Summary Judgment (Dkt. 58-1).

Flash") from Defendant. Dkt. 71-1, ¶6. 411 Flash provides individuals with non-emergency medical transportation services. Dkt. 33, ¶7; Dkt. 70-1, ¶2. At all relevant times, 411 Flash was party to an agreement (Transportation Agreement) with Modivcare Solutions LLC—previously known as Logisticare Solutions LLC. Dkt. 57-5. Modivcare's subscription riders were 411 Flash's only source of revenue. Dkt. 33, ¶17; Dkt. 71-8, ¶4.

Colorado law governs the parties' SPA. Dkt. 33-1 (SPA), p.32. In relevant part, the SPA contains the following two provisions as part of Defendant's representations and warranties to Plaintiffs:

> **Section 3.03 No-Conflicts; Consents.** The execution, delivery and performance by Seller of this Agreement and the Ancillary Documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: . . . (c) except as set forth in Section 3.03 of the Disclosure Schedules, require the consent, notice or other action by any Person under, conflict with, result in a violation or breach of, constitute a default or an event that, with or without notice or lapse of time or both, would constitute a default under, result in the acceleration of or create in any party the right to accelerate, terminate, modify or cancel any Contract to which Seller or the Company is a party or by which Seller or the Company is bound . . . .

> **Section 4.09 Condition and Sufficiency of Assets.** Except as set forth in Section 4.09 of the Disclosure Schedules, the furniture, fixtures, machinery, equipment, vehicles and other items of tangible personal property of the Company are structurally sound, are in good operating condition and repair, and are adequate for the uses to which they are being put, and none of such furniture, fixtures, machinery, equipment, vehicles and other items of tangible personal property is in need of maintenance or repairs except for ordinary, routine maintenance and repairs that are not material in nature or cost. The furniture, fixtures, machinery, equipment, vehicles and other items of tangible personal property currently owned or leased by the Company, together with all other properties and assets of the Company, are sufficient for the

> continued conduct of the Company's business after the Closing in substantially the same manner as conducted prior to the Closing and constitute all of the rights, property and assets necessary to conduct the business of the Company as currently conducted.

*Id.* at pp.8-9, 13.

When the parties entered the SPA in December 2021, Defendant did not notify Modivcare of the transaction, whether in advance or at the time it was completed. Dkt. 71-1, ¶¶36, 39. After Modivcare learned of the transaction between the parties, on January 26, 2022, Modivcare told 411 Flash its senior director wanted 411 Flash to sign a new transportation agreement with it. Dkt. 70-1, ¶21. 411 Flash complied with this request because it did not want to lose its only revenue source. *Id.* This resulted in Modivcare, in its discretion, suspending its use of 411 Flash's services while it waited for the execution of the new transportation agreement. *Id.* at ¶¶22, 23. Under the (original) Transportation Agreement between Modivcare and 411 Flash, Modivcare had full discretion to unilaterally modify, increase, or decrease the rides it assigned to 411 Flash, and it neither gave 411 Flash a guaranteed number of trips nor used 411 Flash as an exclusive provider. *Id.* at ¶¶36-37.

As mentioned, Plaintiffs bring two claims for relief: breach of contract and promissory estoppel. For their contract claim, Plaintiffs allege Defendant breached Sections 3.03 and 4.09 of the SPA.[2] Plaintiffs claim, due to Modivcare's suspension of

---

[2] Plaintiffs appear to also argue a breach of the indemnification provisions of the SPA, Section 8.02, insofar as Defendant breached Sections 3.03 and 4.09.

services with 411 Flash, Defendant's alleged breach of Section 3.03 caused monetary damages, to include gross profits lost by 411 Flash for the three weeks of lost rides in January and February 2022; operating expenses of 411 Flash incurred in that three-week period; and gross profits lost by 411 Flash during the eight months after Modivcare re-established service with 411 Flash. Dkt. 70-1, ¶¶25-27, 33; *see also* Dkt. 28, Section 5.

Plaintiffs also claim Defendant breached Section 4.09, alleging:

24. In Section 4.09 of the Purchase Agreement, Defendant agreed, represented, and warranted that the "vehicles and other items of tangible personal property of the Company" were "structurally sound," "in good operating condition and repair," and "adequate for the uses to which they are being put." Additionally, Defendant represented that "none of" the vehicles were "in need of maintenance or repairs except for ordinary, routine maintenance and repairs that are not material in nature or cost."

33. Despite multiple demands made, Defendant has refused to meet his obligation to indemnify, pay, and reimburse Plaintiffs for the violation of the representation contained in Section 4.09 of the Purchase Agreement with respect to the vehicles that required serious and non-routine repair.

Dkt. 33, ¶¶24, 33, 38. Plaintiffs seek monetary damages from this breach for repairs to vehicles owned by 411 Flash that it paid for via loans it received from a company called MedRide.[3] Dkt. 70-1, ¶¶39-40; *see also* Dkt. 28, Section 5.

---

[3] 411 Flash is not a party to this litigation.

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, then the nonmoving party must identify material facts showing there is a genuine dispute for trial. *Id.* at 324. A fact is "material" if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is "genuine" if a rational trier of fact could find for the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In performing this analysis, the factual record and any reasonable inferences from it are construed in the light most favorable to the nonmoving party. *Id.*

Moreover, when the Court is faced with cross-motions for summary judgment, the "filing of cross motions does not mean that the material facts are undisputed even if the parties focus on the same claim or defense." *In re Ribozyme Pharm., Inc. Secs. Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002). And denying one does not automatically require granting the other. Where, as here, the parties have filed cross-

6

motions for summary judgment (at least in part), the motions must be treated separately. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1147 (10th Cir. 2002) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

## ANALYSIS AND FINDINGS

Defendant moves for summary judgment on each of Plaintiffs' claims. Plaintiffs move for summary judgment only on their breach of contract claim and only regarding Defendant's alleged breach of Section 3.03—Plaintiffs do not seek summary judgment on Defendant's alleged breaches of Sections 4.09 and 8.02.

## 1.    Breach of Contract Claim

To prevail on their breach of contract claim, Plaintiffs must prove (1) the existence of a contract; (2) performance by them or some justification for their nonperformance; (3) failure to perform by Defendant; and (4) resulting damages. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992); *but see City & Cnty. of Denver v. Bd. of Cnty. Comm'rs of Adams Cnty.*, 543 P.3d 371, 382 (Colo. 2024) ("Colorado case law, however, does not condition the filing of a breach-of-contract claim on awareness of loss or damage. Nominal damages are recoverable even if no actual damages resulted or can be proven.") (citing *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 481 (Colo. App. 2003)); *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 818 (Colo. App. 2003) ("Proof of actual damages is not an essential element of a breach of contract claim. When a

plaintiff establishes breach, but does not prove actual damages, the plaintiff is entitled to nominal damages.").

The existence of the SPA between the parties is undisputed. And for purposes of the cross-motions for summary judgment, the Court assumes Plaintiffs' performance of their obligations under the SPA (or some justification for their nonperformance) as undisputed. Further, since under Colorado law, *supra*, resulting damages is not an "essential element" of a breach of contract claim, the question on summary judgment is whether there is a triable issue of material fact regarding Defendant's alleged nonperformance.

**A. Section 3.03**

Article III of the SPA contains Defendant's Representations and Warranties. Dkt. 33-1, pp.8-9. "Plaintiffs allege that Defendant breached Section 3.03 when he failed to disclose the contract between 411 Flash . . . and . . . ModivCare . . . thereby causing damages to Plaintiffs and 411 Flash when, under the terms of the Transportation Agreement and as a result of the transaction, ModivCare implemented a temporary hold on operations and required that Plaintiffs enter a new contract[.]" Dkt. 66, pp.1-2.

Defendant argues the Transportation Agreement between 411 Flash and Modivcare neither required 411 Flash to provide Modivcare with notice of a change in 411 Flash's ownership nor required 411 Flash to obtain Modivcare's consent to a change in ownership. Dkt. 57, pp.6-8. As a result, Defendant argues there is no

8

genuine dispute of fact over his alleged breach of Section 3.03 of the SPA based on his failure to notify Modivcare of, or obtain its consent to, the ownership change. Defendant argues that "[i]ndeed, what caused 411 Flash to enter into a new contract with Modivcare was 411 Flash's own acceptance of Modivcare's email request that a new contract be signed." *Id.* at p.8.

Plaintiffs contend Defendant's arguments are based on a misinterpretation of Section 3.03. Both in their responsive pleading and their own amended summary judgment motion, Plaintiffs also rely on a document Defendant signed and provided to Modivcare—Part A: Disclosure of Ownership and Control (Dkt. 66-3, ECF pp.1-2)—which predates the SPA but which Plaintiffs argue required Defendant to notify Modivcare of a change in 411 Flash's ownership.

Whether Defendant breached Section 3.03 depends on the interpretation of that provision because it is undisputed Defendant neither provided Modivcare notice of the change in 411 Flash's ownership nor received its consent to the change. Contract interpretation is a matter of law for the court in the absence of ambiguity in the contract. *Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). Contract interpretation may become an issue of fact only if the court determines a particular contract provision is ambiguous. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996). "The primary goal of contract interpretation is to determine the intent of the parties . . . ," which is mainly derived from the language of the contract itself. *Ad Two*, 9 P.3d at 376. "Written contracts

9

that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language." *Id.* A contract is ambiguous if it is susceptible on its face to more than one reasonable interpretation, and absent an ambiguity, the court cannot look beyond the four corners of the document to determine the meaning intended by the parties. *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059-60 (Colo. 2005); *Ad Two*, 9 P.3d at 376-77.

The relevant portion of Section 3.03 at issue is its subsection (c). In that subsection, Defendant (as Seller) represented and warranted that:

> **Section 3.03 No-Conflicts; Consents.** The execution, delivery and performance by Seller of this Agreement and the Ancillary Documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: . . . (c) except as set forth in Section 3.03 of the Disclosure Schedules, require the consent, notice or other action by any Person[4] under, conflict with, result in a violation or breach of, constitute a default or an event that, with or without notice or lapse of time or both, would constitute a default under, result in the acceleration of or create in any party the right to accelerate, terminate, modify or cancel any Contract to which Seller or the Company is a party or by which Seller or the Company is bound . . ..

Dkt. 33-1, pp.8-9. This language is plain and unambiguous. By this language, Defendant represented and warranted that the selling of his shares in 411 Flash to Plaintiffs did not and would not require the consent, notice or other action by a person; that the sale did not and would conflict with, result in a violation or breach

---

[4] The SPA defines "Person" to mean "an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity." Dkt. 33-1, p.5.

of, or constitute a default under any contract which Defendant or 411 Flash was a party or bound; and that the sale did not and would not constitute a default or an event that (with or without notice or lapse of time or both) would constitute a default under, or result in the acceleration of, or create in any party a right to accelerate, terminate, modify or cancel any contract to which Defendant or 411 Flash was a party or bound.

The undisputed material facts demonstrate there are no triable issues over whether Defendant breached this provision. First, there is nothing in the Transportation Agreement between 411 Flash and Modivcare that required 411 Flash to notify Modivcare of a change in ownership or required Modivcare to consent to a change in ownership.[5] *See generally* Dkt. 57-5. Second, there is no evidence the SPA or Defendant's lack of notice to Modivcare resulted in a breach, default, or other violation of the Transportation Agreement between Modivcare and 411 Flash— indeed, 411 Flash remained a party to the Transportation Agreement and the

---

[5] The Court also finds the plain terms of the Transportation Agreement unambiguous. That agreement contains this provision: "Assignment. Provider may not assign, transfer, delegate, consign, or convey to any other person or entity Provider's rights and responsibilities hereunder without the express written consent of LGTC, such consent to be withheld in LGTC's sole discretion. Any attempted unauthorized assignment shall be null and void." Dkt. 57-5, ECF p.24, subsection (r). There is no evidence in this case that the stock sale between the parties included or resulted in an assignment or transfer of 411 Flash's rights and responsibilities under the Transportation Agreement to anyone else. Instead, the undisputed facts show 411 Flash retained its rights and obligations under the Transportation Agreement after the stock sale and until Plaintiffs voluntarily agreed to enter a new transportation agreement with Modivcare.

agreement remained in full force and effect through Modivcare's subsequent request to Plaintiffs to enter a new transportation agreement. Third, there is no evidence that the change in ownership created any right in Modivcare to accelerate, terminate, modify or cancel the Transportation Agreement between it and 411 Flash, or that it resulted in these actions in light of Plaintiffs' decision to voluntarily agree to enter a new transportation agreement with Modivcare.

Instead, the undisputed evidence shows that after the change in ownership, Modivcare told 411 Flash (then under Plaintiffs' ownership) that its senior director requested 411 Flash sign a new transportation agreement. Dkt. 70-1, ¶21; Dkt. 57-9. 411 Flash, through Plaintiffs, voluntarily complied with this request because it did not want to lose its only revenue source. *Id.* This resulted in Modivcare temporarily suspending its use of 411 Flash's services, in its discretion, while it got the new transportation agreement in place. *Id.* at ¶¶22, 23. While Modivcare had full discretion to unilaterally modify, increase, or decrease the rides it gave 411 Flash, and while it never gave 411 Flash a guaranteed number of trips or used it as an exclusive provider, there is no evidence in the summary judgment record that the change in ownership created some additional right in Modivcare to seek changes to the existing Transportation Agreement such that Defendant breached the SPA when he failed to notify Modivcare of the change. *Id.* at ¶¶36-37.

Plaintiffs rely on certain deposition testimony of Modivcare and 411 Flash and its representatives, to support their argument that Defendant was required under

the Transportation Agreement to notify Modivcare of the change in ownership, he breached the Transportation Agreement by failing to do so, and that breach caused Modivcare to "require" that 411 Flash enter a new transportation agreement. But this testimony is parol evidence which the Court may not consider to alter the terms of the plain and unambiguous Transportation Agreement. *Ad Two*, 9 P.3d at 376 ("Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract."); *Reisig v. Resol. Tr. Corp.*, 806 P.2d 397, 400 (Colo. App. 1991) ("If an instrument is clear in its terms, complete, and free from ambiguity, extrinsic evidence will not be permitted to modify it.").

Similarly, Plaintiffs' reliance on the Part A ownership disclosure Defendant provided to Modivcare is inapposite. Dkt. 66-3, ECF pp.1-2. There, Defendant identified himself as the owner of 411 Flash and signed the disclosure under the following statement (in relevant part): "By signing this form, I certify that the information provided is true and correct. I will notify [Modivcare] if any information provided in this form changes." *Id.* at ECF p.2. He then signed the disclosure as CEO of 411 Flash on March 21, 2017. *Id.* 411 Flash and Modivcare subsequently signed the Transportation Agreement on April 12, 2017, and May 2, 2017, respectively. Dkt. 57-5, ECF p.27. The latter contains an integration clause which unambiguously provides that the Transportation Agreement "contains the entire agreement of the parties with respect to its subject matter and supersedes all prior oral or written agreements or understanding regarding the same subject matter." *Id.* at ECF pp.26-

27. The Transportation Agreement does not contain any provision that required Defendant to notify Modivcare of any change to Part A, nor does it incorporate Part A by reference. *See Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995) ("[T]he terms of a contract intended to represent a final and complete integration of the agreement between the parties are enforceable, and extrinsic evidence offered to prove the existence of prior agreements is inadmissible. Even when extrinsic evidence is admissible to ascertain the intent of the parties, such evidence may not be used to demonstrate an intent that contradicts or adds to the intent expressed in the writing." (citations omitted). Thus, Plaintiffs cannot use the Part A document to vary the terms of the unambiguous Transportation Agreement or the SPA.

For these reasons the Court finds no reasonable juror could find Defendant breached Section 3.03 of the SPA. And without a breach of contract, Plaintiffs cannot show resulting damages, whether nominal or actual, on the alleged breach of Section 3.03.

**B. Section 4.09**

Defendant argues he is entitled to summary judgment on Plaintiffs' claim that he breached Section 4.09 of the Agreement (regarding his representations and warranties about the condition of the vehicles) because Plaintiffs lack standing to pursue the damages they claim for the alleged breach of this section. The Court agrees with Defendant that, because Plaintiffs' claim alleges a breach of the SPA's representations and warranties, it is subsumed by the SPA's indemnification clause.

14

The SPA unambiguously provides that its Article VIII, concerning indemnification, is the parties' "sole and exclusive remedy . . . for any breach of any representation, warranty, covenant, agreement or obligation set forth herein." Dkt. 33-1, p.30. Stated in full:

> **Section 8.09 Exclusive Remedies.** Subject to Section 2.04(b), Section 6.02 and Section 9.11, the parties acknowledge and agree that their sole and exclusive remedy with respect to any and all claims (other than claims arising from fraud, criminal activity or willful misconduct on the part of a party hereto in connection with the transactions contemplated by this Agreement) for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement, shall be pursuant to the indemnification provisions set forth in ARTICLE VII and this ARTICLE VIII. In furtherance of the foregoing, each party hereby waives, to the fullest extent permitted under Law, any and all rights, claims and causes of action for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other parties hereto and their Affiliates and each of their respective Representatives arising under or based upon any Law, except pursuant to the indemnification provisions set forth in ARTICLE VII and this ARTICLE VIII. Nothing in this Section 8.09 shall limit any Person's right to seek and obtain any equitable relief to which any Person shall be entitled or to seek any remedy on account of any party's fraudulent, criminal or intentional misconduct.

*Id.*

In relevant part, Defendant (as Seller) indemnified Plaintiffs as follows:

> **Section 8.02 Indemnification By Seller.** Subject to the other terms and conditions of this ARTICLE VIII, Seller shall indemnify and defend each of Buyers and their Affiliates (including the Company) and their respective Representatives (collectively, the "Buyer Indemnitees") against, and shall hold each of them harmless from and against, and shall pay and reimburse each of them for, any and all Losses incurred or sustained by, or imposed upon, the Buyer Indemnitees based upon, arising out of, with respect to or by reason of: (a) any inaccuracy in or breach of any of the representations or warranties of

15

> Seller contained in this Agreement . . . ; (b) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Seller pursuant to this Agreement . . . [.]

*Id.* at p.26.

Based on these contractual provisions, Defendant argues it is of no moment that under Colorado law Plaintiffs may be entitled to recover nominal damages in the absence of actual damages on their breach-of-contract claim. *See City & Cnty. of Denver*, 543 P.3d at 382; *Interbank Invs.*, 77 P.3d at 818. That's because, as Defendant argues, "nominal damages are unavailable because actual losses are a condition precedent to [Defendant's] breach of his duty to indemnify." The Court disagrees.

The SPA's indemnification provisions in Article VIII are unambiguous. In Section 8.02, Defendant indemnified Plaintiffs from "any and all *Losses* incurred or sustained" from his breach of the representations and warranties contained in the SPA. Dkt. 33-1, p.26 (emphasis added). According to the SPA, "Losses" "means losses, *damages*, liabilities, deficiencies, Actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind, including reasonable attorneys' fees and the cost of enforcing any right to indemnification hereunder . . . ; provided, however, that 'Losses' shall not include punitive damages[.]" *Id.* at p.4.

Because the SPA defines "Losses" to include "damages," as opposed to "actual damages" (for example), the unambiguous language includes Defendant's indemnification for nominal damages. *See, e.g.,* Black's Law Dictionary (12th ed. 2024) (defining "nominal damages" as "[a] small amount fixed as damages for breach

16

of contract without regard to the amount of harm."). To be sure, if the parties did not intend nominal damages to be included in the recoverable "Losses" for a breach of Defendant's representations and warranties, they knew how to exclude categories of damages as shown by their express exclusion of punitive damages from the definition of "Losses." *See DA Mountain Rentals, LLC v. The Lodge at Lionshead Phase III Condo. Ass'n Inc.*, 409 P.3d 564, 571 (Colo. App. 2016) (discussing application of the rule of *expressio unius exclusio alterius* to contract interpretation).

Since, under Colorado law, proof of actual damages is not an essential element of a breach of contract claim because a breach gives rise to recovery of nominal damages, and because nominal damages are included in the definition of "Losses" as used in Section 8.02, Plaintiffs' alleged inability to prove actual damages provides no basis to grant summary judgment in Defendant's favor on any alleged breach of Sections 4.09 and 8.02.

### C. Promissory Estoppel Claim

Plaintiffs have also asserted a claim for promissory estoppel. It is axiomatic, however, that "promissory estoppel is . . . applicable only in the absence of an otherwise enforceable contract." *Gilmore v. Ute City Mortgage Co.*, 660 F. Supp. 437, 439-40 (D. Colo. 1986). "Recovery on a theory of promissory estoppel is incompatible with the existence of an enforceable contract" because, "[w]hen there has been mutual agreement by the parties on all essential terms of a contract, the alternative remedy of promissory estoppel is never reached." *Haynes Mech. Sys., Inc. v. Bluon Energy,*

17

*LLC*, No. 18-cv-03004-KLM, 2021 WL 3128652, at \*12 (D. Colo. July 23, 2021) (cleaned up); *Pickell v. Arizona Components Co.*, 902 P.2d 392, 394-95 (Colo. App. 1994), *rev'd on other grounds*, 931 P.2d 1184 (Colo. 1997) (promissory estoppel is not available as an alternative remedy when there is an enforceable contract between the parties).

Plaintiffs' promissory-estoppel claim is premised on the exact same promises and breaches alleged in its breach-of-contract claim. *See* Dkt. 33, ¶¶41-52. Because the SPA is a valid, enforceable, and fully integrated contract on all essential terms of the parties' stock purchase transaction, Plaintiffs' claim for promissory estoppel is precluded as a matter of law.[6] *See. e.g., Stone Creek Bus. Ctr., LLLP v. Stone Creek-Colorado, LLC*, No. 20-cv-01413-PAB-GPG, 2022 WL 4448822, at \*4 (D. Colo. Sept. 23, 2022) (granting summary judgment on claim for promissory estoppel because "a party may not recover for promissory estoppel where there is an enforceable contract"); *Allred v. Innova Emergency Med. Assocs., P.C.*, No. 1:18-cv-03097-DDD-NRN, 2020 WL 3259249, at \*5 (D. Colo. June 16, 2020) ("Summary judgment is

---

[6] The fact that Plaintiffs may not be able to prove one or more elements of their claim for breach of contract does not render the contract "unenforceable" for purposes of asserting an alternative claim for promissory estoppel; particularly where, as here, Plaintiffs neither allege that the SPA was rescinded or otherwise failed legally, nor that the promissory-estoppel claim covers conduct or promises outside the SPA. *See Interbank Invs.*, 77 P.3d at 816 (quasi-contractual recovery may be allowed when an express contract failed or was rescinded, or when the quasi-contractual claim covers conduct outside the express contract or matters arising after the express contract); *see also Pinnacol Assurance v. Hoff*, 375 P.3d 1214, 1220 (Colo. 2016) (promissory estoppel is a "quasi-contractual cause of action").

proper on Dr. Allred's claims for promissory estoppel and quantum meruit because the Agreement governs the relationship between the parties and thus precludes these claims.").

*　　*　　*

For the reasons shared above, the Court orders as follows:

1.　　Defendant's Motion for Summary Judgment (Dkt. 57) is GRANTED IN PART and DENIED IN PART—it is granted insofar as Plaintiffs allege a breach of Section 3.03 and on Plaintiffs' claim for promissory estoppel and is denied insofar as Plaintiffs allege a breach of Sections 4.09 and 8.02;

2.　　Plaintiffs' Amended Motion for Partial Summary Judgment (Dkt. 58-1) is DENIED;

3.　　Plaintiff's Motion for Partial Summary Judgment (Dkt. 56) is DENIED AS MOOT;

4.　　Plaintiffs' Motion to Amend (Dkt. 58) their Motion for Partial Summary Judgment is GRANTED; and

5.　　The July 31, 2024 motions hearing is VACATED.

DATED: July 30, 2024

BY THE COURT:

S. Kato Crews
United States District Judge

19